IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| CHRISTY LEE MAESTAS, <br><br> Plaintiff, <br><br> vs. <br><br> KILOLO KIJAKAZI, Commissioner of Social Security, <br><br> Defendant. | CV 20-93-M-KLD <br><br> ORDER |

Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying her application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq.

## I.     Procedural Background

Plaintiff applied for disability benefits on December 13, 2016, seeking Title II benefits with an onset date of disability December 2, 2014. (Doc. 19 at 14). Plaintiff's claim was denied initially, on reconsideration, and by ALJ Richard A. Opp on May 3, 2019. (Doc. 17 at 23). The appeals council denied Plaintiff's request for review, thereby making the ALJ's decision dated May 3, 2019, the agency's final decision for the purposes of judicial review. Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

1

## II. Legal Standards

### a. Standard of Review

42 U.S.C. § 405(g) provides a limited waiver of sovereign immunity, allowing for judicial review of social security benefit determinations after a final decision of the Commissioner made after a hearing. See *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A court may set aside the Commissioner's decision "only if it is not supported by substantial evidence or is based on legal error." *Treichler*, 775 F.3d at 1098 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where evidence is susceptible for more than one rational interpretation," the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).

### b. Disability Determination

To qualify for disability benefits under the Social Security Act, a claimant bears the burden of proving that (1) they suffer from a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months or more; and (2) the impairment renders the claimant incapable of performing past relevant work or any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). See also *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920. If a claimant is found to be "disabled" or "not disabled" at any step, the ALJ need not proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005). The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If so, then the claimant is not disabled within the meaning of the Social Security Act.

At step two, the ALJ must determine whether the claimant has any impairments, singly or in combination, that qualify as severe under the regulations.

20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will proceed to step three.

At step three the ALJ compares the claimant's impairments to the impairments listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). If the ALJ finds at step three that the claimant's impairments meet or equal the criteria of a listed impairment, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the ALJ proceeds beyond step three, she must assess the claimant's residual functional capacity. The claimant's residual functional capacity is an assessment of the work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling (SSR) 96-8p. The assessment of a claimant's residual functional capacity is a critical part of steps four and five of the sequential evaluation processes.

At step four, the ALJ considers whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work that exists in significant numbers in the

national economy, taking into consideration claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(4)(v). The ALJ may satisfy this burden through the testimony of a vocational expert or by referring to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the ALJ meets this burden, the claimant is not disabled.

### III. Discussion

The ALJ followed the five-step sequential process in evaluating Plaintiff's claim. At step one, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through September 30, 2018. The ALJ further found that Plaintiff had not engaged in substantial gainful activity since December 2, 2014, the alleged onset date. (20 CFR 404.1571 *et seq*.) (Doc. 17 at 16).

At step two, the ALJ determined Plaintiff had the following severe impairments: (1) degenerative disc disease of the spine, (2) hallux valgus and heel spurs bilaterally, (3) carpal tunnel syndrome, (4) degenerative joint disease of the right shoulder, (5) obesity, and (6) mild arthritis of the left knee. (Doc. 17 at 16). He further concluded that the above impairments limit the ability for Plaintiff to perform basic work activities. (Doc. 17 at 16). The ALJ also noted that the record showed Plaintiff has been treated for colitis-related symptoms, but those limitations are not adequately supported by the record, nor is colitis a severe

impairment. (Doc. 17 at 16).

At step three, the ALJ found the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (Doc. 17 at 17).

The ALJ found Plaintiff had the residual functional capacity to perform a range of light work as follows:

> Plaintiff can "stand and/ or walk for a total of four hours in a an eight-hour workday; occasionally operate foot controls with the bilateral lower extremities; occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; never balance on a narrow surface or crawl; occasionally stoop, kneel, and crouch; never reach overhead with the bilateral upper extremities; frequently reach in front and laterally with the bilateral upper extremities; frequently handle find, and feel with the bilateral upper extremities; and avoid concentrated exposure to vibration, extreme cold, unprotected heights, and working around hazardous moving machinery.

(Doc. 17 at 17). At step four, the ALJ found Plaintiff could not perform past relevant work as a veterinary tech and kennel worker but could perform past work as a data entry clerk. (Doc. 17 at 21). Proceeding to step five, the ALJ found based on the vocational expert's testimony that there were other jobs existing in significant numbers in the national economy that Plaintiff could perform including office helper, an electronics worker, and a parking lot cashier. (Doc. 17 at 21).

Plaintiff argues the ALJ decision is not supported by substantial evidence and raises two issues on appeal. First, Plaintiff argues the ALJ improperly used the

opinions of the non-examining state agency consultants because they were stale. Second, Plaintiff contends the ALJ failed to adequately consider Plaintiff's subjective testimony. The Court will address each argument in turn.

### A. Medical Opinion Evidence

Plaintiff argues that the ALJ did not follow the regulations when he determined Plaintiff's RFC after partially discounting the opinions of the consulting providers who didn't account for Plaintiff's obesity. When evaluating a disability claim, an ALJ may rely on medical "opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinion of a treating physician is entitled to the greatest weight. *Lester*, 81 F.3d at 830. "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician." *Lester*, 81 F.3d at 830.

Where there are conflicting medical opinions in the record, the ALJ is responsible for resolving that conflict. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, it is entitled to controlling

weight. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir 2007). If a treating physician's opinion is not entitled to controlling weight, the ALJ considers several factors in determining what weight it will be given. *Orn*, 495 F.3d at 631. Those factors include the "[l]ength of the treatment relationship and the frequency of the examination" and the "[n]ature and extent of the treatment relationship." *Orn*, 495 F.3d at 631 (quoting 20 C.F.R. § 404.1527(c)(2)(i)-(ii)). Additional factors relevant to the ALJ's evaluation of any medical opinion, not limited to that of a treating physician, include: (1) the supportability of the opinion; (2) the consistency of the opinion with the record as a whole; (3) the specialization of the treating or examining source; and (4) any other factors that are brought to the ALJ's attention that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c).

To discount the uncontroverted opinion of a treating or examining physician, the ALJ must provide clear and convincing reasons for doing so and those reasons must be supported by substantial evidence. *Lester,* 81 F.3d at 830 (9th Cir. 1995). To discount the controverted opinion of a treating or examining physician, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. The ALJ may accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Here, Plaintiff takes issue with the ALJ partially rejecting the opinions of the examining independent physicians after they did not address her obesity. (Doc. 20 at 2). The duty to resolve conflicts based on the medical evidence is left to the ALJ, and this Court must uphold the ALJ's determination "where the evidence is susceptible to more than one rational interpretation." *Hutcheson v. Comm'r of Soc. Sec.*, No. 1:16-CV-00366-SKO, 2017 WL 3839956, at *7 (E.D. Cal. Sept. 1, 2017) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir 1995)). When medical reports are inconclusive, "'questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary.'" *Magallanes*, 881 F.2d 747, 751 citing *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir.1982) quoting *Waters v. Gardner*, 452 F.2d 855, 858 n. 7 (9th Cir.1971). Thus, the Court must determine whether the ALJ properly evaluated the medical opinions using the factors set forth above.

In her brief, Plaintiff argues the ALJ erred by resolving a conflict between Plaintiff's records and the "stale" opinions of Drs. Fernandez and Schofield when calculating Plaintiff's RFC. Plaintiff appears to argue that the ALJ erred because he did not totally discount the opinions of Drs. Fernandez and Schofield instead of giving them some weight; then he should have proceeded to find Plaintiff more disabled than he did or have further developed the record by consulting other medical providers instead of using Plaintiff's records to determine her RFC.

However, a review of the ALJ's decision reveals the ALJ did not err. The ALJ considered the findings of the state physicians, properly discounted part of their findings, and accepted the findings of the Plaintiff's treating providers and incorporated those findings into his decision.

ALJs can use opinions by examining physicians that amount to substantial evidence as long as they are not contradicted by all other evidence in the record. *Magallanes*, 881 F. 2d at 752. However, the ALJ does not need to agree with the entirety of a medical opinion to hold that it contains substantial evidence. *Magallanes*, 881 F. 2d at 753. Here, the ALJ found that Drs. Fernandez and Schofield did not consider Plaintiff's obesity, which renders Plaintiff somewhat more limited. (Doc. 17 at 20). In his opinion, the ALJ noted that Plaintiff is in the Level 1 Obesity Category because of her BMI, and this fact needed to be considered when making the RFC determination. SSR 02-1p. (Doc. 17 at 20). The ALJ also noted that Plaintiff's providers did not note significant symptoms associated with obesity, nor did her daily activities seem to be hindered by her obesity so he did not consider it a severe impairment. The ALJ then explained that the state agency physicians did not consider Plaintiff's obesity when making their RFC findings, so Plaintiff is likely more limited than their assessments. (Doc. 17 at 20). The remainder of Drs. Fernandez and Schofield's findings are consistent with the findings of Plaintiff's treating providers. The consulting physicians found

Plaintiff had a "normal gait… moderately severe disc degeneration and protrusion." (Doc. 17 at 69, 81). Meredith Ruland, PA-C noted the same findings (Doc. 17 at 618-19). Jamie Mashek, PA-C found Plaintiff had some mild neck and spinal tenderness, intact motor strength, intact reflexes, and good range of motion. (Doc. 17 at 511). Because the findings and opinions of the state physicians are mostly consistent with those of the treating providers, with the exception for the obesity consideration, the ALJ properly considered the opinion testimony of the state physicians in her determinations.

Plaintiff then argues the ALJ erred by coming up with his own diagnostic medical evidence, after affording some weight to the opinions of the consulting physicians. (Doc. 19 at 17-20). Yet, pointing out contradictions between a doctor's opinion and the medical findings is "a permissible determination within the ALJ's province." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Additionally, resolving a discrepancy between a medical examination and a claimant's testimony is within the bounds of an ALJ's purview. *Magallanes*, 881 F.2d at 751. Plaintiff argues the ALJ made up this opinion out of whole cloth, but this Court finds that the ALJ properly assessed Plaintiff's medical records to make his decision.

The ALJ looked at more recent evidence than the independent evaluations from 2017, and found Plaintiff had more limitations than she did in 2017. (Doc 17 at 20, 73, 83). The ALJ placed Plaintiff's BMI into the regulations and determined

he needed to include her obesity in his RFC determination. Next, the ALJ used his discretion to determine it was reasonable to restrict Plaintiff's RFC to standing and walking to four hours in an eight-hour workday, instead of the prescribed six due to her more limited mobility and obesity. (Doc. 17 at 20). Plaintiff fails to point to evidence suggesting any limitations beyond those the ALJ identified because no medical source determined that Plaintiff had any limitations greater than those in the residual functional capacity finding. (Doc. 17 at 445).

Further, unlike many of the ALJs in cases cited by Plaintiff, the ALJ did not go outside the record and consult medical textbooks or make up new evidence. Instead, the ALJ listened to Plaintiff's personal testimony and looked at the medical records to determine her obesity limited her RFC under SSR 02-1p. The ALJ properly resolved the conflict between the state physician's RFC determination and Plaintiff's records to find a more limited RFC. The ALJ's RFC determination does not contradict the opinions of Plaintiff's treating physicians. Additionally, the analysis and opinion of an expert selected by the ALJ may be helpful to the ALJ's adjudication, and courts should not impose "burdensome procedural requirements that facilitate ... second-guessing [the ALJ's resolution of conflicting medical testimony]." *Allen v. Heckler,* 749 F.2d 577, 580 (9th Cir. 1984).

Even if the ALJ had erred by improperly disregarding Drs. Fernandez and

Schofield, any such error would be harmless. If an ALJ errs in his consideration of medical evidence, but the RFC accounts for Plaintiff's obesity by including greater physical limitations than stated by a medical provider, the error is harmless. See *Kendel S. v. Commissioner of Social Security*, 2021 WL 3510379 at *3 (W.D. Wash. 2021) (finding ALJ error harmless because the RFC accounted for obesity by including greater physical limitations than medically assessed). Additionally, if the ALJ can proceed to step five of the disability analysis, the ALJ's error at step four is harmless. *Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (finding ALJ's step four error harmless where the ALJ provided an alternative finding at step five that claimant could perform other work existing in the national economy). Thus, the Court finds the ALJ did not err when making Plaintiff's RFC determination. Because the findings and opinions of the examining providers are mostly consistent with those of the treating providers, there is no contradiction or discrepancy to resolve, and the ALJ properly considered the opinion when determining Plaintiff's RFC.

## B. Subjective Symptom Testimony

Plaintiff argues that the ALJ failed to adequately consider Plaintiff's subjective complaints. The ALJ must follow a two-step process when evaluating a claimant's subjective symptom testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has

presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036. If the claimant meets this initial burden, at step two the ALJ may discredit the claimant's subjective symptom testimony about the severity of her symptoms "only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036.

Here, the ALJ found Plaintiff met her initial burden because she produced evidence of medically determinable impairments that could reasonably be expected to cause her alleged symptoms. The ALJ then found that her statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely consistent with the medical and other evidence in the record. (Doc. 17 at 18).

At her administrative hearing, Plaintiff testified that she felt she was unable to work due to her continued back and shoulder pain and pain and numbness in her hands and feet. (Doc. 17 at 35). She said she could not work or use a computer due to having to switch positions so often, numbness in her hands and feet, and diminishing fine motor skills. (Doc. 17 at 43-45). Plaintiff stated she could not turn her head over her left shoulder and can walk a mile, but tripped and stumbled a lot because of foot numbness. (Doc 17 at 37). Plaintiff testified that attending to her

personal hygiene was challenging because she must use her left hand and she has difficulty writing legibly due to the numbness in her fingers. (Doc. 17 at 35- 45)

The ALJ provided a detailed summary of the medical evidence, and discounted Plaintiff's testimony as to the severity of her physical impairments for various reasons. The ALJ noted that Plaintiff's records show improvement from prescribed treatments and an inclination for Plaintiff to continue physical activities and pursuits such as hiking with her dog and wanting to go back to work after positive results from her 2016 foot-surgery. (Doc. 17 at 366, 446, 453). Although Plaintiff complained of inability to move and pain in her feet, the ALJ observed that Plaintiff's providers noted a normal gait, normal reflexes, normal range of motion and no obvious deformities after her successful foot surgery. (Doc. 17 at 366, 618). Although Plaintiff has some neuropathy, the ALJ found it was not disabling enough to prevent Plaintiff from completing daily tasks, although she said the pain was immense. This is consistent with Dr. Elba Maldando's finding of no pain behaviors and normal gait. (Doc. 17 at 489). The ALJ found that Plaintiff's testimony about her motor and grip skills was not consistent with testing done in 2017 which showed intact motor and grip strength with no atrophy. (Doc. 17 at 511).

In subsequent visits throughout 2017, Jamie Mashek, PA-C noted Plaintiff had some mild neck and spinal tenderness, intact motor strength, intact reflexes

and good range of motion. (Doc. 17 at 511). Although Plaintiff has alleged complete disability, Jamie Mashek, PA-C, did not recommend Plaintiff go on disability and opined that she should try physical therapy and movement to treat her symptoms instead. (Doc. 17 at 445). Further in 2018, Meredith Ruland, PA-C, noted that Plaintiff's shoulder pain was "much improved" after steroid injections. (Doc. 17 at 808).

Additionally, an ALJ may discount a claimant's testimony based on daily activities that either contradict that testimony or meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, Plaintiff testified, and her records show, that she enjoys going on short hikes with her dog on soft trails. (Doc. 17 at 20). Plaintiff also does work around the house including cooking, cleaning, and caring for herself. (Doc. 17 at 49, 58).

The ALJ did not err when he found that Plaintiff's subjective complaints are not entirely consistent with the treatment records because the records show improvement from prescribed treatments and an inclination for Plaintiff to continue physical activities and pursuits such as hiking with her dog. The Court finds the ALJ provided clear and convincing reasons, supported by substantial evidence, for discrediting Plaintiff's testimony regarding her subjective symptoms.

### IV. Conclusion

For all the above reasons, the Court concludes that the ALJ's decision is based on substantial evidence and free of prejudicial legal error. Accordingly, IT IS ORDERED that the Commissioner's decision is affirmed.

DATED this 17th day of March, 2022

*/s/ Kathleen L. DeSoto*
Kathleen L. DeSoto
United States Magistrate Judge